## ELIZABETH JOHNSON *vs.* JOHN PERLEY.

A widow is entitled to dower in lands of which her husband was seized during coverture, if the lands were at that time " in a state of cultivation," though yielding no net income.

Lands must be considered " in a state of cultivation," when they are not in their original state of nature, or, after being cleared and worked, have not reverted to a similar state.

In ascertaining the right of dower at common law, the income or annual value was not regarded; nor should it be under our statute or the statute of Merton.

But under our statute, it is a secondary guide to the sheriff in the assignment, and under the statute of Merton, when the husband died seized, it is a circumstance to be weighed in estimating the damage.

THIS was a writ of dower, which the demandant alleged had happened to her of a tenement situated in Enfield.

The tenant filed several pleas in bar, all of which were disproved or waived except one, where it was averred, that when the husband of the demandant parted with his seisin in the premises, they were not in a state of cultivation, nor kept as a wood or timber lot appurtenant to a farm.

On this an issue having been joined, it appeared in evidence at the trial here, November term, A. D. 1818, that about thirty years since the land in dispute was cleared of its timber, and, after a crop of grain, was for some time occupied as a pasture; but while owned by the husband of the demandant, the fences became ruinous, and the fields lay open to the highway, except a small piece on which for one or two years turnips were raised.

During the whole time of his ownership, however, the witnesses all agreed, that no regular annual income was derived from the premises.

On this last evidence, the court directed a verdict for the tenant, subject to further consideration how far this evi-

dence was conclusive against the right of the demandant to dower.

*J. Smith & W. Smith,* counsel for the demandant.

*R. Fletcher & Pettengill,* for the tenant.

WOODBURY, J.  At the trial of this cause, some of the members of the court were inclined to think, that land, which yielded no annual income during the husband's seisin, though it might have been cultivated, was not the subject of dower.  But on reflection we are all inclined to question the correctness of that position.

The issue in this case, is, not whether there was any income, but whether the land was " in a state of cultivation."

It therefore follows, that if land can be " in a state of cultivation," and yet, in the words of our statute, (1) not " produce an income," the present verdict must be set aside.

(1) 1 N. H. Laws 190.

" A state of cultivation" must be the converse to a state of nature ; and whenever lands have been wrought with a view to the production of a crop, they must be considered as becoming and continuing in " a state of cultivation," until abandoned for every purpose of agriculture, and designedly permitted to revert to a condition similar to their original one.

But, if by income be meant actual net profits, it is obvious, that in every stage, from the lowest to the highest " state of cultivation," lands may be so managed as not to " produce an income."

This may arise from the employment of expensive agents, the failure of visionary experiments, and the extravagant prices paid for labor ; or from inattention to manures, an injudicious rotation of crops, and general bad husbandry.  On the contrary, if by income be meant some vegetable growth, whether annual or otherwise, few lands are without it, and so far from any distinction existing between lands in a state of nature and those in " a state of cultivation," that the growth upon the former, when near navigable waters, is often more valuable and abundant than any cultivated crops.

We can conjecture, also, that by the word income might be meant not actual net profits nor vegetable growth ; but a capacity in the soil to produce net profits, when managed with neither too expensive, nor too negligent husbandry.

8

Thus, in England, under the 2d and 3d of *Edward* VI.,
the decisions concerning tithes, " in barren heath or waste
"ground," have been,that such ground is not exempt, when in
fact yielding no net profits, but only when " *suapte natura*
" *sterilis,* and requiring extraordinary expense either in ma-
" nure or labor to bring it into a proper state of cultivation."
3 *Bulst.* 165.—1 *Roll. Rep.* 354.—*Bull. N. P.* 191.—1 *Vez.*
115.—2 *Maul & Selw.* 362, *Warwick vs. Collins.*

But land is so abundant here, that little can be found in
" a state of cultivation," without capacity, under a usual
course of husbandry, to produce net profits ; and if such a
tract could be found, it does not *ipso facto* cease to be in a
state of cultivation, merely because it is naturally sterile and
unprofitable for agriculture. Nor does dower in it cease to
be valuable ; because the tract may be improved for wharves
or building spots, and contain mines of ore, or quarries of
useful stone.

A more particular examination of the statute upon dower
will fortify these conclusions ; and, for the time consumed in
making it, no apology need be offered, except the different
opinions and practice, which, at different periods, have pre-
vailed concerning its true construction.

The statute contains only two sections, one of which pro-
vides that no widow " shall be entitled to dower in any lands
" whereof her husband was seized during the marriage, un-
" less such lands were in *a state of cultivation* during such
" seisin or were used and kept as a wood or timber lot, and
" considered as appurtenant to some farm or tenement at the
" same time owned by the husband of such woman." The
other section declares, " that when any person, who in his
" life time was seized of lands or tenements *cultivated or im-*
" *proved,* and shall lose or part with his title therein, and
" shall afterwards die, leaving a widow having right of dow-
" er in the same, such widow shall be endowed of one third
" part in value of such lands, with the buildings thereon, ac-
" cording to the value thereof at the time such husband so
" lost or parted with his title thereto ; and such widow shall,
" also be endowed of such part of said lands as will pro-

"duce an income equal to one third part of the income, "which such lands produced at the time such husband lost "or parted with his title therein, and not otherwise."(1)

(1) 1 N. H. Laws 190.

The plain intent of the statute seems to be to prescribe, by the 1st section, in what lands a widow may be endowed ; and, by the 2d section, the quantity of dower and the mode of assigning it.

The right of dower is limited to lands " in a state of cul- "tivation ;" because a life estate in lands in a state of nature would generally be worthless, the tenant for life being subject to trespass and waste, if she cut down wood and timber for the purposes of sale or cultivation. 10 *Mass. Rep.* 307. —*Bac. Ab.* " *Waste*" *C.*

But, without incurring these liabilities, perhaps she could cut ordinary fuel ;(2) and hence she may be endowed in a wood lot whenever appurtenant to cultivated land.

(2) 7 John. Rep.234, Jackson *vs.* Brownson.

It is supposed by some, that this first section is only declaratory of the common law. It certainly says nothing as to " income ;" and it is equally certain, that, at common law, the " income" was no test of the right of endowment. Indeed, it was not regarded, even in the assessment of damage, till the statute of Merton ; and, under that, is considered only in cases where the husband died seized. *Bull. N. P.* 117.—1 *Leon.* 56.—2 *Saund.* 45 *note*, 331. *Doctor & Student, ch.* 13.

There is, therefore, neither express statute, nor analogy to make " income" a criterion ; and, if any latitude of construction be permissible, it should surely incline towards helpless females, who, in both a civil and moral view, are richly entitled to favor. 2 *Saund.* 45, *Williams vs. Gwyn.* —*Barnes* 2.—2 *Pierre Wms.* 702.—*Cruise's Digest title* " *Dower.*"

The supposed difficulty in assigning dower, where there was no income, grows out of the second section ; and is a question, totally distinct from the right of dower, which arises under the first section. We see nothing in it, however, which is insuperable.

The lands, in which a widow can be endowed, having been described, it is declared, that she shall be " endowed of one " third part in value of such lands, with the buildings there- " on, according to the value thereof at the time such hus- " band so lost or parted with his title thereto." Thus far the second section furnishes an invariable guide in the as- signment of dower, which, under a different statute, the sheriff is empowered to make by means of freeholders sum-

(1) 1 N. H Laws 189.

moned, &c.(1)

But cases were known to exist, in which value alone was not the proper guide, such as " inheritances, that shall be " entire, where no division can be made by metes and " bounds, or where a woman cannot be endowed of the " premises," and there it is provided, that " she shall be " endowed thereof in a special and certain manner, as of a " third part of the rent, issues, and profits thereof, to be com-

(2) 1 N. H. Laws 189.

" puted and ascertained in manner aforesaid."(2)

And hence, too, as a general direction in all cases, it is added in the second section now under consideration, that " such widow shall also be endowed of such part of said " lands as will produce an *income* equal to one third part of " the income, which such lands produced at the time such " husband lost or parted with his title therein."

As guides to the sheriff and freeholders, " value" and " in- " come," it will be seen, are thus both made important ; but as guides to the court and jury in settling the right of dower, they are not mentioned in the statute, and might prove very

(3) 2 John. Rep. 119.

fallacious.(3)

In the assignment, where both existed, if both were not considered, the widow might have her dower equal to one third in *value* in a portion of the tract now become a forest, and from which she could derive no regular income, without being exposed to actions of trespass or waste ; or she might have her dower equal to one third of the former income in a part of the tract very small, and of little capacity to pro- duce greater income.

But if value is always regarded, as it always must have existed ; and if income be regarded, also, whenever it ex- isted, she will receive justice without injury to the tenant.

Because, where land was "in a state of cultivation," though without net income, and has not yet reverted to a state of nature, the use of a tract, equal to one third of the whole in value, might be profitable, since, without strip and waste, she could improve it to advantage. If there was some net income, then there must be embraced in her third in value some part of the tract now yielding as much as one third of that income.

But if the land has now reverted to a state of nature, and originally yielded no net profits ; and that should be deemed the true construction of the word " income," she must receive only one third in value, and obtain from that third only such fire-bote, hedge-bote, &c. as can be taken without strip or waste. That is all she ever gets in a wood lot appurtenant to a farm.

In the case of *Leonard vs. Leonard et al.* (4 *Mass. Rep.* 533) the mode of assignment was alone in controversy. Their statute, also, may not correspond with ours. And we are satisfied, that in the present case there ought to be a

*New trial.*